**SMITH CORRELL, LLP**
MARK SMITH—California SBN 213829
 msmith@smithcorrell.com
JACOB FONNESBECK—California SBN 304954
 jfonnesbeck@smithcorrell.com
11601 Wilshire Blvd., Suite 2080
Los Angeles, CA 90025
Tel: (213) 443-6222
Fax: (877) 730-5910
Attorneys for Plaintiffs
REFLEX MEDIA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REFLEX MEDIA, INC., a Nevada corporation; and CLOVER8 INVESTMENTS PTE. LTD., a Singapore corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> PILGRIM MEDIA GROUP, LLC, a Delaware limited liability company, PILGRIM FILMS AND TELEVISION, LLC, a California limited liability company; PILGRIM OPERATIONS, LLC, a California limited liability company; LIFETIME ENTERTAINMENT SERVICES, LLC, a Delaware limited liability company; A&E TELEVISION NETWORKS, LLC, a Delaware limited liability company; AFTERBUZZ TV, LLC, a California limited liability company; and DOES 1–10, inclusive, <br><br> Defendants. | Case No. 2:18-cv-2260 <br><br> **FIRST AMENDED COMPLAINT FOR CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT; FALSE DESIGNATIONS, FALSE DESCRIPTIONS, FALSE ADVERTISING, UNFAIR COMPETITION; FRAUD IN THE APPLICATION; COPYRIGHT INFRINGEMENT; AND CALIFORNIA UNFAIR COMPETITION** <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Reflex Media, Inc. ("Reflex Media"), and Clover8 Investments PTE. Ltd. ("Clover8," and together with Reflex Media, "Plaintiffs"), hereby bring this amended complaint against Pilgrim Media Group, LLC, a Delaware limited liability company ("Pilgrim Media"); Pilgrim Films and Television, LLC, a California limited liability company ("Pilgrim Films"); Pilgrim Operations, LLC, a California limited liability company ("Pilgrim Operations," and together with Pilgrim Films and Pilgrim Media,

"PMG" or the "PMG Defendants"); Lifetime Entertainment Services, LLC, a Delaware Corporation ("Lifetime Entertainment"); A&E Television Networks, LLC, a Delaware limited liability company ("A&E," and together with "Lifetime Entertainment," the "Network"); AfterBuzz TV, LLC, a California limited liability company ("AfterBuzz TV," and collectively with PMG and the Network, "Defendants"), and allege as follows:

## INTRODUCTION

1.     This is an action arising out of: (a) Defendants' unauthorized use, and application for registration, of Plaintiffs' common law trademark, LOVE AT FIRST FLIGHT (sometimes referred to as the "Trademark") and stylized logo, which Reflex Media has used in commerce since at least 2015 in connection with its reality entertainment series (the "Original Series")—a production that has garnered over 701,000 views on YouTube and is available worldwide; and (b) Defendants' copyright infringement of Reflex Media's Original Series. The Original Series, which is actually named, *Love at First Flight*, features: (i) subjects of general human interest, specifically: dating, relationships, and the possibility of finding love between people who meet in-person for the first time during travel; and (ii) Reflex Media's unique style, artistic choices, and expression.

2.     The PMG Defendants collectively operate as an entertainment studio that has produced several reality entertainment series, including: *Topless Prophet* (a series "showcasing the steamy action that goes on inside [Alan Markovitz's metro Detroit topless clubs]—including a 'fetish night' promotion and the debut of two jittery novices recruited from Pontiac"), *Stripsearch* (a competition show to find new strippers for a traveling "strip revue"), *Welcome To Sweetie Pie's* (a series about Sweetie Pie's restaurants), *The Ultimate Fighter* (a competition series and promotional vehicle for the Ultimate Fighting Championship mixed martial arts organization, their pay-per-view shows, and fight nights), *American Chopper, Dirty Jobs with Mike Rowe*, *Down East Dickering*, *Ghost Brothers* and *Ghost Hunters*.

3.     The PMG Defendants, together with the Network, have produced and are promoting and broadcasting through multiple forms of transmission media—including

**FIRST AMENDED COMPLAINT**

1   YouTube—a reality entertainment series named, *Love at First Flight* (the "Infringing
2   Series"), the premise of which also concerns dating, relationships, and the possibility of
3   finding love between people who meet in-person for the first time during travel but does
4   not contain Reflex Media's unique style, artistic choices, and expression. As further
5   described below, the Infringing Series substantially copies Reflex Media's Original Series.

6          4.     The Defendants' infringement on Plaintiffs' Trademark, logo (described
7   below) and copyrights causes confusion between Reflex Media and its Original Series, on
8   the one hand and the Defendants and their Infringing Series, on the other hand.

9          5.     Indeed, a search on YouTube for the phrase, "love at first flight," yields results
10  that make it virtually impossible to distinguish between Reflex Media's Original Series
11  and Defendants' Infringing Series. The following image is a screenshot taken from
12  YouTube following such a search. The first and third videos listed are from Defendants'
13  Infringing Series, and the second, fourth, and fifth videos are part of Reflex Media's
14  Original Series.



15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

**FIRST AMENDED COMPLAINT**

6.      Creating even more confusion, Defendants' affiliate—AfterBuzz TV—has promoted the Infringing Series using both the Trademark, and Plaintiffs' stylized *Love At First Flight* logo, which Clover8 has applied to register with the United States Patent and Trademark Office (the "USPTO")[1]. Notably, the version of Plaintiffs' logo copied and used by AfterBuzz TV also includes the phrase, "by MissTravel." This version of Plaintiffs' logo is referred to herein as the "Logo."

7.      The Logo and Trademark are sometimes referred to collectively as "the Marks."

8.      Plaintiff Clover8 owns the registered trademark, MISS TRAVEL (the "Miss Travel Mark"), which it licenses to Reflex Media for use in connection with its website, <www.MissTravel.com> ("MissTravel.com").[2]

9.      Defendants' use of the Logo is explicitly misleading as the source of the Infringing Series because it identifies the Infringing Series as being produced and broadcast "by MissTravel," which simply is not true and gives the false impression that the Infringing Series is created or otherwise affiliated with Reflex Media and its website, MissTravel.com.

10.     Simply put, Defendants' conduct is infringing Plaintiffs' intellectual property rights, including the Marks and the copyrights they own and use in connection with the Original Series (collectively, the "Copyrights"), and this infringement creates confusion and explicitly misleads consumers as to the Infringing Series' content, origin, affiliation, and/or sponsorship.

## **PARTIES**

11.     Plaintiff Reflex Media is, and at all material times hereto was, a corporation duly organized and existing under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada. Among other things, Reflex Media produces entertainment content and operates several dating websites, including MissTravel.com, a

---

[1] Plaintiff Clover8's application has been assigned Serial No. 87931098.
[2] MissTravel, Miss Travel, and/or MissTravel.com are trade names of Reflex Media.

**FIRST AMENDED COMPLAINT**
4825-1047-1015, v. 1

website that promotes and describes itself as a place for "connecting travel-seeking singles." MissTravel.com's stated goal is "to match all travel lovers who wish to share the sites of the world with someone special."

12.     Plaintiff Clover8 is, and at all material times hereto was, a corporation duly organized and existing under the laws of Singapore. Clover8 is the registered owner of several federally registered trademarks that are used by Reflex Media and has applied for a federal trademark on the mark, LOVE AT FIRST FLIGHT, at the behest of Reflex Media.

13.     Defendant Pilgrim Media is a Delaware limited liability company whose principal place of business is located in North Hollywood, California. Based on information and belief, Pilgrim Media owns, controls and directs the activities of Defendant Pilgrim Films, which is a subsidiary of Pilgrim Media and an entity that co-produced the Infringing Series. Based on information and belief, Pilgrim Media is also a co-owner of the Infringing Series.

14.     Defendant Pilgrim Films is a California limited liability company whose principal place of business is located in North Hollywood, California. Pilgrim Films has applied for the standard character trademark, LOVE AT FIRST FLIGHT, with the USPTO. Pilgrim Films is also a co-producer of the Infringing Series.

15.     Defendant Pilgrim Operations is a California limited liability company whose principal place of business is located in North Hollywood, California. Pilgrim Operations is a co-producer of the Infringing Series.

16.     Defendant Lifetime Entertainment is a Delaware limited liability company whose principal place of business is in New York, New York. Based on information and belief, Lifetime Entertainment also maintains an office in Los Angeles, California.[3]

17.     Defendant A&E is a Delaware limited liability company and the owner of the

---

[3] Plaintiffs believed that Lifetime Entertainment was the owner of the Lifetime network when the complaint was first filed. Since then, counsel for Lifetime Entertainment has advised Plaintiffs' counsel that Defendant A&E is *actually* the party that owns the Lifetime network. Based on these representations, Plaintiffs plan to voluntarily dismiss (without prejudice) Defendant Lifetime Entertainment shortly after this Amended Complaint is filed. Then, the "Network" will be synonymous with A&E.

**FIRST AMENDED COMPLAINT**

Lifetime network, an American and cable television network. Based on information and belief, Defendant A&E is a co-producer and co-owner of the Infringing Series.

18.    Defendant AfterBuzz TV is a California limited liability company with its principal place of business located in North Hollywood, California. AfterBuzz TV is a digital broadcasting network that produces "post-game after-shows" about television shows. Based on information and belief, AfterBuzz TV has partnered with Defendants A&E, Pilgrim Media and and/or Pilgrim Films to produce an after show that talks about and promotes the Infringing Series.

19.    Plaintiffs do not presently know the true names and capacities of the defendants named herein as Does 1 through 10, inclusive. Plaintiffs will seek leave to amend this amended complaint to allege these defendants' true names and capacities as soon as they are identified. Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named defendants, Does 1 through 10, participated in, and in some manner are responsible for, the acts alleged in this complaint and the damages resulting therefrom.

20.    Plaintiffs are informed and believe that at all times referenced herein, each defendant was or is the agent, employee, partner, co-venturer, joint venture, successor-in-interest, alter ego, and/or co-conspirator of each and all of the other defendants and was acting within the course and scope of said agency, employment, partnership, co-venture, joint venture, relationship and/or conspiracy. Plaintiffs are further informed and believe, and on that basis allege, that each defendant acted in concert with, and with the consent of, each of the other defendants, and that each defendant ratified or agreed to accept the benefits of the conduct of each of the other defendants. Plaintiffs are further informed and believe, and on that basis allege, that each defendant actively and knowingly participated in the furtherance of the wrongful acts alleged herein, directed the wrongful acts alleged herein, benefitted from the wrongful acts alleged herein, and/or used the certain of the entity-defendants in a willful and intentional manner to carry out the wrongful acts alleged herein.

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

22.     This Court has supplemental jurisdiction over Plaintiffs' claims under state law pursuant to 28 U.S.C. § 1367(a).

23.     Personal jurisdiction exists over Defendant Pilgrim Media because it is a Delaware company with its principal place of business in this judicial district.

24.     Personal jurisdiction exists over Defendant Pilgrim Films because it is a California company with its principal place of business in this judicial district.

25.     Personal jurisdiction exists over Defendant Pilgrim Operations because it is a California company with its principal place of business in this judicial district.

26.     Personal jurisdiction exists over Defendant Lifetime Entertainment because it has an office in this judicial district and actively seeks to transact business with residents therein, including as here, California companies such as the PMG Defendants, and to broadcast its cable and satellite channel in Los Angeles, California. As such, personal jurisdiction exists over Defendant Lifetime Entertainment because it conducts and promotes its business in, and, upon information and belief, derives material benefits from the State of California and from this judicial district, or otherwise purposefully avails itself of the privileges and protections of the laws of the State of California, such that traditional notions of fair play and due process are not offended by this Court's exercise of jurisdiction over it. In addition, a material portion of the acts giving rise to the claims against Lifetime Entertainment arise from its conduct within this judicial district.

27.     Personal jurisdiction exists over Defendant A&E because it actively seeks to transact business with residents of this judicial district, including as here, California companies such as the PMG Defendants, and to broadcast its cable and satellite channel in Los Angeles, California. As such, personal jurisdiction exists over Defendant A&E because it conducts and promotes its business in, and, upon information and belief, derives material benefits from the State of California and from this judicial district, or otherwise

**FIRST AMENDED COMPLAINT**

purposefully avails itself of the privileges and protections of the laws of the State of California, such that traditional notions of fair play and due process are not offended by this Court's exercise of jurisdiction over it. In addition, a material portion of the acts giving rise to the claims against Defendant A&E arise from its conduct within this judicial district.

28.     Personal jurisdiction exists over Defendant AfterBuzz TV because it is a California company with its principal place of business in this judicial district.

29.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c)(2) because all Defendants are subject to the personal jurisdiction of this Court, and therefore are deemed residents of this district for purposes of venue, and upon information and belief, all or most of the events giving rise to this action took place within this judicial district.

## OVERVIEW OF IMPORTANT EVENTS

### DEVELOPMENT & PRODUCTION OF REFLEX MEDIA'S ORIGINAL SERIES

30.     In early 2015, Reflex Media began to develop a reality entertainment series named, *Love at First Flight* (the "Original Series"). The Original Series was described in advertising as follows:

"Love at First Flight is a new web series by travel dating site, MissTravel.com. The show follows two singles as they embark on a destination first date. Instead of dinner and a movie, MissTravel connects travel enthusiasts for romantic getaways in destinations such as Cabo San Lucas, Costa Rica and Las Vegas. Will these singles miss their connection, or will they find Love at First Flight? Watch to find out!"

31.     Reflex Media began casting potential participants for the show in 2015, and to attract viewers to its new series, Reflex Media approached individuals who had previously obtained substantial audiences on social media, including the video streaming service and website, YouTube.

32.     On August 11, 2015, the first of four episodes of the Original Series was uploaded to and available on YouTube to a worldwide audience. The episodes are available at:

**FIRST AMENDED COMPLAINT**

1    https://www.youtube.com/watch?v=mYWgWzufKrM,

2    https://www.youtube.com/watch?v=dwpGaVomgZk,

3    https://www.youtube.com/watch?v=JYuLVpnljDo, and

4    https://www.youtube.com/watch?v=bOTCVL_W--8.

5    33. All four episodes of the Original Series have been available for viewing from

6 the date they were uploaded and are still featured on Reflex Media's YouTube channel

7 DateMissTravel, available at https://www.youtube.com/user/DateMissTravel, and also

8 featured on https://www.misstravel.com/press, and https://www.misstravel.com/laff.

9    34. The participants in Reflex Media's Original Series do not meet or fall in love

10 on an airplane or while in the act of flying.

11    35. Each episode of the Original Series indicates in its description that it is part of

12 the *Love at First Flight* series using standard characters.

13    36. Each episode also features the Logo, pictured below:



**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

37.     Additionally, the Original Series has been promoted using the Logo against the background depicted below:



38.     In late 2015, Plaintiff Reflex Media was approached by Cry Baby Media and another production company to discuss adapting the Original Series for television.

39.     Cry Baby Media partnered on production with the PMG Defendants for two reality television shows, including *Down East Dickering* (which A&E also partnered on and aired on their television network, History, from April 2014 until January 2015) and *Ghost Brothers* (which aired from April 2016 until the present date).

40.     Mike Nichols and Craig Piligian—who, based on information and belief, are employed by the PMG Defendants (and indeed, Mr. Piligian is the founder of Pilgrim Media Group)—are the executive producers of *Down East Dickering* and *Ghost Brothers*. They are also the executive producers of Defendants' Infringing Series, with Mr. Piligian being credited by the website *IMDb.com* with its creation.

DEFENDANTS BEGIN DEVELOPING THEIR INFRINGING SERIES

41.     Based on information and belief, the PMG Defendants began to develop their Infringing Series in or about 2016, after Reflex Media was approached by Cry Baby Media and months after the Original Series had been published on YouTube.

42.     Based on information and belief, the PMG Defendants began to cast participants for the Infringing Series in either late 2016 or early 2017, and posted a casting call on their website on January 3, 2017, titled, "Take A Trip and Meet the Love Of Your

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

Life On FYI Network's TV Show Love At First Flight." (Internal quotation marks omitted).

43.     On February 6, 2017, representatives from Reflex Media and the PMG Defendants participated in a phone call to discuss Defendants' Infringing Series.

44.     On February 7, 2017, a representative from Reflex Media followed up on the February 6, 2017, phone call and wrote an email to the PMG Defendants which reads, in relevant part:

"We talked yesterday on the phone regarding [your] interest in Love at First Flight. [I]'d like to set up a meeting with the project lead, yourself, and any producers on the show to discuss us potentially working together for branding and marketing of the show. We produced a show nearly identical in concept (https://www.misstravel.com/laff/), and we think we could offer insight and branding to your show! Please feel free to email or call."

45.     On February 9, 2017, a representative of the PMG Defendants, Brent Owens, wrote an email to Reflex Media stating, in relevant part:

"I've spoken to the relevant parties regarding your email below. They believe your company could potentially be helpful in the casting process, however that phase is nearly complete. If the show gets picked up for an additional season, we'd like to reach out to discuss working together."

46.     On February 21, 2017, a representative from Reflex Media wrote an email to Brent Owens of the PMG Defendants, stating, in relevant part:

"That's unfortunate to hear. Since we won't be involved in this production, I'd like to ask you to talk to the producers about changing the title of the show. Since your show's premise and title are identical to our web series, I think there is a high likelihood of consumers confusing your content with ours. Reflex Media has a common law trademark in this niche: we started to develop our content in early 2015, have released multiple episodes, and have plenty of documentation on our concept inception, production, casting, and launch; I also understand you have

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

casted Jannie Lam, an individual we have used in the promotional material for our website (@ :07 https://www.youtube.com/watch?v=yS013RREaDI). For these reasons I ask [sic] foresee a high likelihood of consumer confusion and ask you to please reconsider the name of your show."

47.     A copy of this email correspondence described above is attached as <u>Exhibit 1</u>.

48.     The PMG Defendants did not respond to Plaintiff Reflex Media's request to change the title of the Infringing Series.

49.     And, based on information and belief, the PMG Defendants attempted to cast Jannie Lam for the Infringing Series.

DEFENDANTS FILE A FRAUDULENT TRADEMARK APPLICATION

50.     On February 27, 2017, six days after Reflex Media informed the PMG Defendants that it had a common law trademark over the mark, LOVE AT FIRST FLIGHT, and that it did not authorize the PMG Defendants' use of the Trademark for Defendants' Infringing Series, Defendants—through Pilgrim Films—filed a trademark application for LOVE AT FIRST FLIGHT with the USPTO under 15 U.S.C. § 1051(b), which became Application Serial No. 87351899 (the "Fraudulent Trademark Application").

51.     An application under 15 U.S.C. § 1051(b) is an "intent-to-use" application, meaning that the applicant intends to use the trademark in commerce after the application date, which was February 27, 2017, in this case.

52.     An "intent-to-use" application also indicates that the applicant, or Defendant Pilgrim Films in this case, does not believe it has used the mark as a trademark prior to the time it submitted its application.

53.     The Fraudulent Trademark Application is for "[e]ntertainment services in the nature of a television and multimedia program series featuring subjects of general human interest distributed via various platforms across multiple forms of transmission media; providing entertainment information to others via a global computer network."

**FIRST AMENDED COMPLAINT**

54.   In their Fraudulent Trademark Application, Pilgrim Films declared that "to the best of [its] knowledge" it "believes that the applicant is entitled to use the mark in commerce."

55.   Pilgrim Films also declared that: "To the best of [its] knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

56.   Pilgrim Films made these declarations even though it knew that a competing reality entertainment series existed that used the Trademark and that their proposed use of the same or nearly identical trademark was likely to create confusion among consumers. As its subsequent actions show, it created, exacerbated and capitalized on this confusion.

57.   Pilgrim Films also likely filed an intent-to-use trademark application for LOVE AT FIRST FLIGHT in response to being specifically told that the PMG Defendants were not authorized to use the Trademark in relation to the Infringing Series, thereby temporarily usurping Reflex Media's right to trademark its intellectual property in bad faith and denying Plaintiffs the rights that come with registration of the Trademark.

58.   Pilgrim Films' Fraudulent Trademark Application was not a concurrent use application.

59.   The USPTO examiner published Pilgrim Film's Fraudulent Trademark Application in the Trademark Official Gazette on May 23, 2017, without a showing of acquired distinctiveness or any other showing of secondary meaning.

60.   Accordingly, the USPTO's examining attorney and Defendant Pilgrim Films believe the trademark, LOVE AT FIRST FLIGHT, is inherently distinctive in relation to "[e]ntertainment services in the nature of a television and multimedia program series featuring subjects of general human interest distributed via various platforms across multiple forms of transmission media; providing entertainment information to others via a global computer network."

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

61.     As of the date of filing this First Amended Complaint, Pilgrim Films has not filed a statement of use with the USPTO, and instead, filed a Request for Extension of Time to File a Statement of Use on January 18, 2018.

PLAINTIFFS PROVIDE FURTHER NOTICE BEFORE THE INFRINGING SERIES IS BROADCAST

62.     On or about March 24, 2017, Plaintiff Reflex Media delivered a cease and desist letter to Defendant Pilgrim Films, asking Defendants to stop infringing on Reflex Media's Trademark and to revoke their application to register the same as a trademark with the USPTO.

63.     Defendants did not respond to Reflex Media's cease and desist letter, and instead, Defendants moved forward with the production of their Infringing Series.

64.     Indeed, based on information and belief, Defendants filmed the Infringing Series between October 8, 2017, and November 5, 2017.

65.     Then, on or about January 25, 2018, Defendants announced that they would broadcast the first episode on their Infringing Series on March 20, 2018, on the Lifetime cable and satellite network, which is owned by Defendant A&E.

66.     On March 20, 2018, Defendants aired the first episode of its Infringing Series on the Lifetime network.

67.     Since then, Defendants have aired a total of eight episodes, which collectively comprise the entire first season of the Infringing Series.

68.     Following the debut of the Infringing Series, Defendant AfterBuzz TV published a fifty-two-minute video titled, "Love At First Flight Season 1 Episode 1 Review & Reaction," in which the hosts discuss the Infringing Series' first episode. Five more AfterBuzz TV Love at First Flight After Shows (collectively the "After Show") were broadcast, with four featuring a different participant from the Infringing Series as a guest.

69.     To promote the Infringing Series and After Show, Defendants used Reflex Media's Logo as its thumbnail image link to the After Show's live stream and video. (*See* Exhibit 2 and Exhibit 3).

////

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

# **GENERAL ALLEGATIONS**

## DEFENDANTS' TRADEMARK INFRINGEMENT

70.   Reflex Media has expended substantial time and resources to create, develop, produce and advertise its reality entertainment web series, *Love at First Flight*, including, but not limited to: casting and compensating well-known social media personalities Gabbie Hanna, Jon Paul Piques, J. Cyrus, and George Janko to appear in and promote the series; flying the cast and film crew members to various destinations for filming and providing accommodations; arranging and paying for activities for the cast; editing the film; and creating artwork for the show.

71.   Reflex Media's Original Series has received unsolicited media coverage and been featured in articles, including articles published on *DatingAdvice.com* and *Metro*. It has also been viewed than 701,000 times.

72.   Defendants did not use the trademark, LOVE AT FIRST FLIGHT, in commerce until after Plaintiff Reflex Media began using the Trademark in connection with its reality entertainment series.

73.   Indeed, before Defendants used the trademark, Reflex Media informed them that it had previously produced a reality entertainment series using the Trademark and name, *Love at First Flight*. And, on February 21, 2017, Defendants were asked to change the name of their reality entertainment series, which—like the Reflex Media's Original Series—also portrays the possibility of finding love between people meeting in-person for the first time during travel.

74.   Therefore, Defendants had knowledge of Reflex Media's prior use of the Trademark, Logo and *Love at First Flight* title before they announced, on January 25, 2018, that they would premier the first episode of their Infringing Series on March 20, 2018.

75.   Defendants have advertised the Infringing Series using marks that are confusingly similar to Plaintiffs' Marks on the Lifetime network in commercials and preview clips.

76.   Defendants have also advertised the Infringing Series using marks that are

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

confusingly similar to Plaintiffs' Marks on the Internet, including on the PMG Defendants' website (http://www.pilgrimstudios.com/casting/firstflight/), the Lifetime network's website (https://www.mylifetime.com/shows/love-at-first-flight), Facebook.com (https://www.facebook.com/firstflightcasting/), YouTube, and on search engines such as Google (*see* Exhibit 4), Yahoo! (*see* Exhibit 5), DuckDuckGo (*see* Exhibit 6), and Ask.com (*see* Exhibit 7), where the Infringing Series' search results are intermingling with the search results for Plaintiffs' first-in-time reality entertainment series, *Love at First Flight*.

77.     Since it was initially broadcast, Defendants have rebroadcast the Infringing Series on the Lifetime network and made it available on YouTube.

78.     In fact, clips of the Infringing Series and an offer to purchase a license to view episodes of the Infringing Series have become intermingled with Plaintiff's first-in-time reality entertainment series when searching for "Love at First Flight" on YouTube (see image above).

79.     Despite Defendants' Infringing Series and its promotion, Plaintiff's Original Series' episodes have significantly more views and comments. (*See* Exhibit 8.)

80.     In addition, Defendant AfterBuzz TV, who—based on information and belief—partnered with A&E, Pilgrim Media and/or Pilgrim Films to produce and broadcast an after show that discussed and promoted the Infringing Series.

81.     These Defendants used Plaintiffs' Logo, which includes the phrase, "by MissTravel," to promote the Infringing Series and the After Show, thereby explicitly misleading consumers as to the Infringing Series' and the After Show's origin.

DEFENDANTS' COPYRIGHT INFRINGEMENT

82.     As described above, Defendants had access to Reflex Media's Original Series, which was available to the public on YouTube before Defendants began producing their Infringing Series.

83.     Without Plaintiffs' authorization or consent, the PMG Defendants and Defendant A&E copied the core plot, theme, mood, settings, and characters of the Original Series.

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

84.     Reflex Media's Original Series consists of individuals meeting for the first time in-person on multiple-day dates in exotic locations such as Hawaii; Cabo San Lucas, Mexico; Vancouver, Canada; and Costa Rica, and other planned locations to include landlocked cities like Las Vegas. The participants featured in the show are young attractive singles who participate in bonding activities such as: attending a live performance featuring shirtless male dancers, zip lining amongst trees, dinner dates, waterfall activities, boating, paddle water activities, and ocean snorkeling.

85.     Reflex Media's Original Series' conveys a theme and mood of fun, adventure, and anticipation for the prospect of burgeoning romantic feelings between the participants on the show.

86.     Defendants' Infringing Series similarly consists of multiple-day dates in exotic locations such as Hawaii, Las Vegas, Seattle, and New York City. The participants featured in the Infringing Series also are young attractive singles who participate in bonding activities such as: attending a live performance featuring shirtless male dancers, tree climbing using climbing lines, waterfall activities, boating, paddle water activities, and ocean snorkeling.

87.     Defendants' Infringing Series also similarly conveys a theme and mood of fun, adventure, and anticipation for the prospect of burgeoning romantic feelings between the participants on the show.

## FIRST CAUSE OF ACTION
### CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT
(Against all Defendants)

88.     Reflex Media incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

89.     Reflex Media has, since at least 2015, used and continues to use *Love at First Flight* as the name of its reality entertainment series, which explores finding love and/or a romantic relationship with someone during travel. Since that time, Reflex Media has also used the LOVE AT FIRST FLIGHT trademark and the Logo in connection with its

**FIRST AMENDED COMPLAINT**

Original Series.

90.    Reflex Media's use of the Marks predates the creation of Defendants' Infringing Series or Defendants' use of marks that are identical and/or confusingly similar to Plaintiffs' Marks. Indeed, based on their intent-to-use application, Defendants did not use these infringing marks in commerce prior to 2017.

91.    LOVE AT FIRST FLIGHT is an inherently distinctive trademark in relation to an entertainment reality series about dating, relationships, and the possibility of finding love between people who meet in-person for the first time during travel and has acquired secondary meaning through its viewership and advertising.

92.    The USPTO has also registered a similar mark (which has been cancelled due to a failure to file a Section 8 declaration), LOVE AT FIRST SIGHT, for "entertainment services; namely, a romance television game show" without a Section 2(f) statement.

93.    Based on the foregoing, Reflex Media has a valid, legally protectable interest in the LOVE AT FIRST FLIGHT trademark and Logo.

94.    Without Reflex Media's consent, PMG, A&E and AfterBuzz TV have used in commerce, in connection with the sale, offering for sale, distribution or advertising of Defendants' goods and services, including, as a title for a competing reality entertainment series that also explores finding love and/or a romantic relationship with someone during travel, a mark identical or substantially similar to Plaintiffs' LOVE AT FIRST FLIGHT trademark and Logo, the use of which is explicitly misleading and likely to cause confusion, mistake and/or deception among consumers who may perceive that Defendants' goods and services are the same as those of Reflex Media, and/or that Defendants' goods and services are somehow associated, affiliated, connected, approved, authorized or sponsored by Reflex Media.

95.    Indeed, Defendants' actions have caused actual confusion. For example, the website <www.twentytwowords.com> recently used a screen capture of a tweet from Reflex Media's MissTravel Twitter account and wrongfully associated Reflex Media's MissTravel account with Defendants' Infringing Series.

**FIRST AMENDED COMPLAINT**

96.     Defendants have knowingly and willfully infringed on the Trademark and Logo since at least February 21, 2017—the date that they received an email from Reflex Media informing them that it had a common law trademark on LOVE AT FIRST FLIGHT and urged Defendants to change the name of their contemplated series.

97.     Defendants acted with the intent to cause confusion, mistake, or deception with consumers. Defendants' intent is apparent from, among other things, the similarity of the shows and Defendants' use of the exact same name: Love at First Flight.

98.     Defendants' continued use of confusingly similar marks that are identical to Plaintiffs' LOVE AT FIRST FLIGHT mark and Logo will continue to cause irreparable harm and injury to Plaintiffs for which Plaintiffs have no adequate remedy at law. The threat of future injury to consumers and to Plaintiffs' intellectual property, business, identity, goodwill and future opportunity to bring its web series to television or other mediums under its Trademark (like other web series that have done the same, such as *Broad City*, *Drunk History* and *Adam Ruins Everything*), necessitates the award of injunctive relief to prevent Defendants' continued infringement of Reflex Media's valuable Marks.

99.     Based on information and belief, Defendants have unjustly profited from their infringement of the Marks, including the large viewership of Reflex Media's Original Series and its association with popular social media influencers.

100.    As a direct and proximate result of Defendants' infringing activities as alleged herein, Plaintiffs have suffered substantial damage in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

## SECOND CAUSE OF ACTION
### CONTRIBUTORY TRADEMARK INFRINGEMENT
(Against All Defendants, Except Pilgrim Operations and AfterBuzz TV)

101.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

102.    Plaintiffs are informed and believe, and on that basis allege, that Defendants A&E and Pilgrim Media entered into an apparent or actual partnership or joint venture for purposes of producing, broadcasting and promoting the Infringing Series, and—based on

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

information and belief—Pilgrim Media directed, oversaw and encouraged Defendant Pilgrim Films to produce and promote the Infringing Series for the benefit of A&E and Pilgrim Media. In turn, Pilgrim Films used Pilgrim Operations as a vehicle for purposes of producing the Infringing Series.

103.   Indeed, based on information and belief, Defendants A&E and Pilgrim Media provided Pilgrim Films, and in turn, Pilgrim Operations, with the capital, personnel and (stolen) concept for producing the Infringing Series and access to the Lifetime cable network where the Infringing Series was first broadcast.

104.   Defendant Pilgrim Films has also applied with the USPTO to register the LOVE AT FIRST FLIGHT trademark, and based on information and belief, Defendant Pilgrim Films has agreed to assign and/or license its rights in the trademark to Defendants A&E and/or Pilgrim Media.

105.   Based on information and belief, Defendants A&E and Pilgrim Media were able and did exercise direct control over and intentionally induced Defendant Pilgrim Films, who in turn exercised control over and intentionally induced Defendant Pilgrim Operations, to infringe Plaintiffs' Trademark.

106.   In addition, based on information and belief, Pilgrim Films—as the applicant and proclaimed owner of the LOVE AT FIRST FLIGHT trademark—exercises control over and intentionally induced Defendants A&E and Pilgrim Media to infringe Plaintiffs' Trademark by using a mark that was identical or confusingly similar thereto in connection with the production, broadcasting and advertising of the Infringing Series.

107.   Defendants A&E, Pilgrim Media and Pilgrim Films' conduct constitutes contributory trademark infringement of Plaintiffs' Marks.

108.   As a direct and proximate result of Defendants' contributory trademark infringement, Plaintiffs have suffered substantial damage in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

////

////

**FIRST AMENDED COMPLAINT**

### THIRD CAUSE OF ACTION
VICARIOUS TRADEMARK INFRINGEMENT
(Against All Defendants, Except Pilgrim Operations)

109.   Plaintiffs incorporate by reference each and every allegation set forth in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

110.   Plaintiffs are informed and believe, and on that basis allege, that Defendants A&E and Pilgrim Media entered into an apparent or actual partnership or joint venture for purposes of producing and broadcasting the Infringing Series, and—based on information and belief—Pilgrim Media directed, oversaw and encouraged Defendant Pilgrim Films to produce the Infringing Series for the benefit of A&E and Pilgrim Media. In turn, Pilgrim Films used Pilgrim Operations as a vehicle for purposes of producing the Infringing Series.

111.   Accordingly, Defendants A&E and Pilgrim Media exercise joint ownership and control, along with Pilgrim Films, over the production, broadcasting and associated advertising for the Infringing Series.

112.   In addition, based on information and belief, Pilgrim Films—as the applicant and proclaimed owner of the LOVE AT FIRST FLIGHT trademark—has an apparent or actual partnership with A&E and/or Pilgrim Media pursuant to which it allows them to use its rights in the trademark.

113.   Based on information and belief, Defendant AfterBuzz TV also has an apparent or actual partnership with Defendants A&E, Pilgrim Media and/or Pilgrim Films related to the production of the After Show, which promotes the Infringing Series using marks that are identical or confusingly similar to Plaintiffs' Marks.

114.   Defendants A&E, Pilgrim Media, Pilgrim Films, and AfterBuzz TVs' conduct constitutes vicarious trademark infringement of Plaintiffs' Marks.

115.   As a direct and proximate result of Defendants' contributory trademark infringement, Plaintiffs have suffered substantial damage in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

////

////

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

### FOURTH CAUSE OF ACTION
FEDERAL FALSE DESIGNATIONS, FALSE DESCRIPTIONS, AND FALSE ADVERTISING,
AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
(Against all Defendants)

116.   Plaintiffs incorporate by reference each and every allegation set forth in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

117.   LOVE AT FIRST FLIGHT is an inherently distinctive trademark in relation to an entertainment reality series about dating, relationships, and the possibility of finding love between people who meet in-person for the first time during travel.

118.   Defendants' misuse of Plaintiffs' Marks in commerce in connection with their Infringing Series—including commercial advertising and promotion of the Infringing Series using the After Show—constitutes a false designation of origin and/or a false or misleading representation that is explicitly misleading and likely to cause confusion, mistake and/or deception with consumers that Defendants and/or their Infringing Series services are associated, affiliated, connected, approved, authorized or sponsored by Reflex Media.

119.   The likelihood of consumer confusion is particularly high here, where Defendants have published advertisements and broadcast a competing reality entertainment series at approximately the same time, though the same and similar channels of distribution, directed at the same consumer demographic.

120.   Moreover, Defendants' After Show has explicitly misled consumers as to the Infringing Series' association, affiliation, connection, approval, authorization or sponsorship with Reflex Media and its Original Series.

121.   Defendants' conduct as described in this amended complaint constitutes a false designation of origin and/or false or misleading representation that is explicitly misleading and likely to cause confusion, mistake, or deception with the public and/or consumers as to the affiliation, connection, or association between Reflex Media and/or its Original Series, on the one hand, and Defendants' and/or their Infringing Series, on the other hand.

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

122.    Based on information and belief, Defendants have unjustly profited from the foregoing conduct.

123.    As a direct and proximate result of Defendants' foregoing conduct, Plaintiffs have suffered damages in an amount to be proven at trial, but estimated to exceed $75,000, exclusive of interest and costs.

### FIFTH CAUSE OF ACTION

FRAUD IN THE APPLICATION UNDER 15 U.S.C. §§ 1119 AND 1120; 28 U.S.C. § 2201
(Against Defendant Pilgrim Films)

124.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

125.    Defendant Pilgrim Films' trademark application contains the following declarations:

a.      "The signatory believes that the applicant is entitled to use the mark in commerce."

b.      "The facts set forth in the application are true."

c.      "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

d.      "To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support."

e.      "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

---

**FIRST AMENDED COMPLAINT**

126.   Pilgrim Films made these declarations even though it knew (and was specifically told) that a competing reality entertainment series existed that had continually used the Trademark before Defendant Pilgrim Films filed its application, before it had used the LOVE AT FIRST FLIGHT mark in commerce and knowing that a high degree of confusion was likely with consumers due to the similarity of Reflex Media's Original Series and Defendants' Infringing Series.

127.   Pilgrim Films' trademark application was not a concurrent use application.

128.   Plaintiffs did not give Pilgrim Films authorization to use the Trademark, and a representative from Reflex Media specifically told Pilgrim Films that it was not authorized to use the Trademark. Accordingly, Pilgrim Films knew that "other persons [. . .] have the right to use the mark in commerce" and that it was not "entitled to use the mark in commerce," nor did it "have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

129.   Upon information and belief, Pilgrim Films made these statements to deceive the USPTO so that it would publish the application for opposition and the USPTO has relied on those representations.

130.   On March 2, 2018, Clover8 applied for federal registration of its LOVE AT FIRST FLIGHT Trademark with the USPTO which became Application Serial No. 87818846.

131.   Once assigned to an examiner, Clover8's trademark application will be suspended per 37 C.F.R. §2.83(c) and TMEP 1208.01, pending a decision on Pilgrim Film's unlawful application.

132.   Plaintiffs have been harmed by Pilgrim Films' application because: (1) it represents that Pilgrim Films has a right to use the Trademark in commerce, and (2) will delay the publication of Clover8's Application Serial No. 87818846 and the requested registration of the Trademark by the USPTO.

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

133.   Therefore, Plaintiffs petition the Court to order Pilgrim Films to withdraw Application Serial No. 87351899, pending before the USPTO, and to refrain from refiling such an application.

## SIXTH CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501
(Against All Defendants, Except AfterBuzz TV)

134.   Plaintiffs incorporate by reference each and every allegation set forth in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

135.   Reflex Media is in the process of registering copyrights for the Original Series with the U.S. Copyright Office (the "Copyrights") and will update this Court and deliver evidence of the same as soon as soon as the applications are filed.

136.   Reflex Media therefore has reserved all rights in the Original Series and owns the exclusive right to prepare derivative works based on the Original Series.

137.   As described above, Defendants PMG and A&E had knowledge of and access to Reflex Media's Original Series prior to the time it began production on its own Infringing Series.

138.   As also described above, Defendants' Infringing Series is substantially similar to Reflex Media's Original Series and copied the core plot, theme, mood, settings, and characters of the Original Series, including an attempt to use one of Reflex Media's previously used cast members.

139.   Defendants PMG and A&E are engaging, and have engaged, in the unauthorized use and violation of Reflex Media's exclusive rights in the Original Series, including unauthorized publication of the Infringing Series, production, reproduction, sale, exploitation, and distribution, of the Infringing Series and any unauthorized publication, production, reproduction, sale, exploitation, and distribution, and preparation of other products derived from the Original Series.

140.   Defendants PMG and A&E, without permission or consent from Reflex Media, have used and continue to use the Original Series to produce and advertise the production of a derivative work, the Infringing Series. In doing so, Defendants PMG and

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

A&E have violated Reflex Media's Copyright including production, reproduction, and distribution, and the right to prepare derivative works based on the Original Series.

141.   The foregoing acts have been and are willful and intentional.

142.   Defendants PMG and A&E's conduct has caused and will continue to cause Reflex Media irreparable injury that may not be fully compensated for with money, and for those damages there is no adequate remedy at law. Therefore, Reflex Media is entitled to injunctive relief to enjoin further behavior as described in this amended complaint.

143.   As a direct and proximate result of the infringement by Defendants PMG and A&E of Plaintiffs exclusive rights, Reflex Media is entitled to actual damages and Defendants PMG and A&E's profits pursuant to 17 U.S.C. § 504(b).

### SEVENTH CAUSE OF ACTION
CONTRIBUTORY COPYRIGHT INFRINGEMENT
(Against All Defendants, Except Pilgrim Operations and AfterBuzz TV)

144.   Plaintiffs incorporate by reference each and every allegation contained in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

145.   Plaintiffs are informed and believe, and on that basis allege, that Defendants A&E and Pilgrim Media entered into an apparent or actual partnership or joint venture for purposes of producing, broadcasting and promoting the Infringing Series, and—based on information and belief—Pilgrim Media directed, oversaw and encouraged Defendant Pilgrim Films to produce and promote the Infringing Series for the benefit of A&E and Pilgrim Media. In turn, Pilgrim Films used Pilgrim Operations as a vehicle for purposes of producing the Infringing Series.

146.   Indeed, based on information and belief, Defendants A&E and Pilgrim Media provided Pilgrim Films, and in turn, Pilgrim Operations, with the capital, personnel and concept for producing the Infringing Series and access to the Lifetime cable network where the Infringing Series was first broadcast.

147.   As described above, each of A&E, Pilgrim Media and Pilgrim Films knew that the Infringing Series substantially copied Reflex Media's Original Series and thereby violated its copyrights.

**FIRST AMENDED COMPLAINT**

148.   Reflex Media is informed and believes, and on that basis alleges, that Defendant A&E has materially contributed to the copyright infringement alleged herein by broadcasting the Infringing Series on its cable television network and by making it available on the Internet through streaming services, including YouTube.

149.   Reflex Media is informed and believes, and on that basis alleges, that Defendants Pilgrim Media and Pilgrim Films induced Defendant Pilgrim Operations to produce the Infringing Series and provided material support and direction over Pilgrim Operations' production of the Infringing Series.

150.   The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, and in disregard of and with indifference to the rights of Reflex Media.

151.   Reflex Media is informed and believes, and on that basis alleges, that Defendants A&E, Pilgrim Media and Pilgrim Films have derived substantial financial benefit from the production, broadcast and dissemination of the Infringing Series.

152.   Defendants A&E, Pilgrim Media and Pilgrim Films' conduct constitutes contributory infringement of Reflex Media's Copyrights, in violation of Section 106 and 501 of the Copyright Act.

153.   As a direct and proximate result of the foregoing, Reflex Media has suffered substantial damages to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and a dilution of the value of its exclusive rights in the amount to be established at trial. Reflex Media is entitled to its actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b).

154.   Alternatively, Reflex Media is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each work infringed or such other amounts as may be proper under 17 U.S.C. § 504(c).

155.   Reflex Media is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

156.   Defendant A&E, Pilgrim Media and Pilgrim Films' conduct is causing and,

**FIRST AMENDED COMPLAINT**

unless enjoined and restrained by this Court, will continue to cause Reflex Media great and irreparable injury that cannot fully be compensated or measured in money. Accordingly, pursuant to 17 U.S.C. § 502, Reflex Media is entitled to injunctive relief prohibiting further infringement of its copyrights.

## EIGHTH CAUSE OF ACTION
VICARIOUS COPYRIGHT INFRINGEMENT
(Against All Defendants, Except Pilgrim Operations and AfterBuzz TV)

157.  Plaintiffs incorporate by reference each and every allegation contained in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

158.  Plaintiffs are informed and believe, and on that basis allege, that Defendants A&E and Pilgrim Media entered into an apparent or actual partnership or joint venture for purposes of producing, broadcasting and promoting the Infringing Series, and—based on information and belief—Pilgrim Media directed, oversaw and encouraged Defendant Pilgrim Films to produce and promote the Infringing Series for the benefit of A&E and Pilgrim Media. In turn, Pilgrim Films used Pilgrim Operations as a vehicle for purposes of producing the Infringing Series.

159.  As a result, each of A&E, Pilgrim Media and Pilgrim Films had the right and ability to supervise the infringing conduct.

160.  Plaintiff is informed and believes, and on that basis alleges, that Defendants A&E, Pilgrim Media and Pilgrim Films all received a direct financial benefit from the infringing activity described herein.

161.  Defendants A&E, Pilgrim Media, and Pilgrim Films' conduct constitutes vicarious copyright infringement of Reflex Media's copyrights in violation of Section 106 and 501 of the Copyright Act.

162.  As a direct and proximate result of the foregoing, Reflex Media has suffered substantial damages to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and a dilution of the value of its exclusive rights in the amount to be established at trial. Reflex Media is entitled to its actual damages and Defendants A&E, Pilgrim Media, and Pilgrim Films' profits attributable to the infringement pursuant

28

**FIRST AMENDED COMPLAINT**

to 17 U.S.C. § 504(b).

163.   Alternatively, Reflex Media is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each work infringed or such other amounts as may be proper under 17 U.S.C. § 504(c).

164.   Reflex Media is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

165.   Defendant A&E, Pilgrim Media and Pilgrim Films' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Reflex Media great and irreparable injury that cannot fully be compensated or measured in money. Accordingly, pursuant to 17 U.S.C. § 502, Reflex Media is entitled to injunctive relief prohibiting further infringement of its copyrights.

## NINTH CAUSE OF ACTION

UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE. § 17200 *ET SEQ.*
(Against all Defendants)

166.   Plaintiffs incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs of this amended complaint, as if fully set forth herein.

167.   Any conduct that is unlawful, unfair or deceptive constitutes a violation of the California Unfair Competition Law, Business and Professions Code § 17200 *et seq* ("UCL").

168.   Defendants have violated California's UCL by: (a) infringing on Plaintiffs' Marks, as described above; and (b) by falsely representing that an affiliation, connection, and/or association exists between Reflex Media and/or its Original Series, on the one hand, and Defendants and/or their Infringing Series, on the other hand.

169.   Defendants' aforementioned conduct has caused harm to Plaintiffs and diminished the value of its Marks, brand and goodwill in an amount to be proven at trial.

170.   Plaintiffs request that that this Court enjoin Defendants from further engaging in the trademark infringement described in this complaint.

////

---

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.      Adjudge that Plaintiffs' Marks have been infringed by Defendants' acts and used in violation of Plaintiffs' common-law rights;

2.      Adjudge that Defendants have competed unfairly with Plaintiffs in violation of Plaintiffs' rights under 15 U.S.C. § 1125 and applicable state law;

3.      Adjudge that Defendants and each of their agents (and subagents), employees, attorneys, successors, assigns, affiliates, and joint ventures and any person(s) in active concert or participation with them, and/or person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.      Selling, offering for sale distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble or are confusingly similar to Plaintiffs' Marks as to be likely to cause confusion, mistake or deception, on or in connection with any goods or services that are not authorized by Plaintiffs;

b.      Using any word, term, name, symbol, or device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants' or their goods/services with Plaintiffs, or as to the origin of Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact;

c.      Further infringing on the rights of Plaintiffs in and to any of its trademarks, trade dress, products and services or otherwise damaging Plaintiffs' goodwill or business reputations;

d.      Otherwise competing unfairly with Plaintiffs in any manner; and

e.      Continuing to perform in any manner whatsoever any of the other acts complained of in this amended complaint;

4.      Adjudge that Defendants, within thirty (30) days after service of the judgment

**FIRST AMENDED COMPLAINT**

demanded herein, be required to file with this Court and serve upon Plaintiffs' counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

5. Adjudge that Plaintiffs recover from Defendants their actual damages and lost profits in an amount to be determined at trial, but estimated to exceed $75,000, for Defendants' violations of 15 U.S.C. § 1125 and common-law infringement; that Defendants be required to account for any profits that are attributable to its illegal acts; and that Plaintiffs be awarded the greater of (1) three times Defendants' profits or (2) three times any damages sustained under 15 U.S.C. § 1117, plus prejudgment interest or (3) statutory damages;

6. Adjudge that Plaintiffs recover from Defendants their actual damages and lost profits plus any additional profits of Defendants PMG and A&E, in an amount to be determined at trial, but estimated to exceed $75,000, for Defendants' violations of 17 U.S. Code § 501; that Defendants be required to account for any profits that are attributable to its illegal acts.

7. Adjudge that Plaintiffs be awarded their costs incurred in connection with this action, including its reasonable attorneys' fees and investigative expenses;

8. Impose a constructive trust on all of Defendants' funds and assets that arise out of Defendants' infringing activities;

9. Adjudge that publication of Application Serial No. 87351899 was procured from the USPTO based on fraudulent statements made therein;

10. Impose an injunction, requiring Defendants to withdraw Application Serial No. 87351899 currently pending before the USPTO and enjoin it from refiling such an application;

11. Impose a preliminary and permanent injunction, enjoining Defendants from further engaging in the conduct described herein;

12. Adjudge that all such other relief be awarded to Plaintiffs as this Court deems just and proper.

31

**FIRST AMENDED COMPLAINT**

# **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a jury trial in this matter.

Dated: May 30, 2018                              **SMITH CORRELL, LLP**


                                        By:   /s/   Mark L. Smith
                                              Mark L. Smith
                                              Attorneys for Plaintiffs

---
32

**FIRST AMENDED COMPLAINT**

# CERTIFICATE OF SERVICE

I hereby affirm that a copy of the foregoing Amended Complaint was served upon the following persons on May 30, 2018, via the Court's electronic filing system:

Alonzo B. Wickers, IV
  alonzowickers@dwt.com
Cydney Swofford Freeman
  cydneyfreeman@dwt.com
Nicolas A. Jampol
  nicolasjampol@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
865 South Figueroa Street Suite 2400
Los Angeles, CA 90017-2566

*Attorneys for Pilgrim Media Group, LLC,*
*Pilgrim Films and Television, LLC,*
*and Lifetime Entertainment Services, LLC*

                                    _____/s/ Melina Hernandez_____

**FIRST AMENDED COMPLAINT**

4825-1047-1015, v. 1